Filed 10/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAVON GODFREY, et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>OAKLAND PORT SERVICES CORP.,<br><br>     Defendant and Appellant. | A139274<br><br>(Alameda County<br>Super. Ct. No. RG08379099) |

Named plaintiffs Lavon Godfrey and Gary Gilbert initiated this class action lawsuit against Oakland Port Services Corp., doing business as AB Trucking (AB). They alleged that AB did not pay its drivers for all hours worked, misclassified some drivers as non-employee trainees and did not pay them at all, and failed to provide required meal and rest breaks. Plaintiffs sought certification of the class of drivers who performed work for AB out of its Oakland, California facility. The trial court granted the class certification motion, and the case proceeded to a bench trial. Plaintiffs prevailed on most of their causes of action and the court awarded the class a total of $964,557.08. In a post-judgment order, the court awarded attorney fees, litigation expenses, and class representative enhancements to plaintiffs.

On appeal, AB relies primarily on the argument that federal law preempts application of California's meal and rest break requirements to motor carriers. AB also argues in passing that the court order granting class certification was unsupported by substantial evidence, but without addressing the evidence presented on the motion; that the court should have reserved individual determinations of damages for the claims administration process; that AB's drivers are expressly excluded from coverage under Industrial Welfare Commission (IWC) Order No. 9-2001; and that the award of attorney

1

fees and class representative enhancements should be reversed.  We find no merit in AB's preemption or other arguments and affirm.

## BACKGROUND

Class members are employees of AB who drive trucks owned by AB between the Port of Oakland and AB's yard, located in the general port area.  Drivers also drive loads to customer locations within the San Francisco Bay Area and elsewhere in California.

On September 20, 2010, plaintiffs filed a second amended complaint (SAC) in which they sought to represent the class of all drivers who performed work for AB out of its Oakland facility between March 28, 2004, and November 1, 2010.  The SAC stated eight causes of action:  (1) unfair business practices, in violation of Business and Professions Code section 17200 et seq. (unfair competition law or UCL); (2) failure to pay for all hours worked; (3) failure to pay for any hours worked due to misclassification of employment status; (4) failure to pay overtime; (5) violation of the living wage provision of the Oakland City Charter; (6) failure to provide all required meal and rest breaks; (7) failure to pay wages owed at termination of employment; and (8) provision of inaccurate wage statements.

When plaintiffs moved for class certification on October 29, 2010, they identified the class as those drivers who performed work for AB out of the Oakland facility between March 28, 2004, and December 3, 2010.  They identified five subclasses:  (1) those who had not been paid for all hours worked; (2) those who were misclassified as non-employee trainees and paid no wages; (3) those who were not paid for overtime worked; (4) those who were paid less than Oakland's living wage; and (5) those who had not been provided the required meal and rest breaks.[1]  Following a hearing, the trial court

---

[1] Plaintiffs had previously moved for class certification, but the record of those previous motions is not before us.  In granting plaintiffs' final motion for class certification, the court noted "that Plaintiffs' earlier motions for class certification fell short in various ways, as enumerated by the court in its interim orders."

granted plaintiffs' motion on December 3, 2010, identifying the time period defining the class to be from March 28, 2004, "through the date of notice to the class."[2]

Immediately prior to trial, AB moved for reconsideration of the class certification order, seeking "modification or decertification of the class." The court denied AB's motion.[3]

A bench trial took place over several days in February 2012. Eight drivers testified (among other witnesses)—six class members, including Godfrey and Gilbert, for the plaintiffs and two drivers, who had chosen to opt out of the class, for AB.

The court issued a notice of intended decision on October 2, 2012. AB requested a written statement of decision on October 11, 2012. Plaintiffs filed a proposed statement of decision and AB filed objections, among which it contended that California's meal and rest break requirements, as applied to motor carriers, are preempted by the Federal Aviation Administration Authorization Act of 1994 (FAAAA). Following a hearing, the court filed a statement of decision (SOD) and judgment on May 21, 2013.

The SOD noted that plaintiffs had dismissed the fourth cause of action, for failure to pay overtime wages, during trial. For the remaining causes of action, the court found in favor of plaintiffs on causes of action 1, 2, 3, 6, 7, and 8. It found in favor of AB on the fifth cause of action, for violation of Oakland's living wage ordinance, because AB did not employ enough people to be covered by the ordinance.[4] The SOD awarded the class a total of $964,557.08.

The court's primary factual findings in the SOD were: (1) AB failed to pay for all hours worked because AB's records showed that "it deducted one hour per day from each employee. This deduction took place, even though the driver did not receive a one hour

---

[2] The time period was later specified in the trial court's statement of decision as from March 28, 2004 through March 15, 2011.

[3] The order denying the motion for reconsideration of class certification is not in the record before us and is not addressed in AB's appeal. We are aware of it because the court noted its denial in the notice of intended decision, filed on October 2, 2012.

[4] Plaintiffs do not appeal from that or any other ruling.

3

meal period."; (2) "AB misclassified drivers who were suffered or permitted to work as non-employees, or unpaid 'trainees.' . . . The evidence reflected these trainees were suffered or permitted [to] work by AB and were not paid at all."; and (3) plaintiffs had "presented substantial and persuasive evidence that class members were routinely and consistently precluded by AB from taking meal periods and rest breaks." The court then determined that these primary findings supported the derivative claims that AB had engaged in unfair competition, had failed to pay all wages owed on termination of employment, and had failed to provide accurate, itemized wage statements. The trial court also rejected AB's contention that the FAAAA preempts California's meal and rest break requirements.

On August 9, 2013, the trial court awarded plaintiffs $487,810.50 in attorney fees, $42,106.16 in litigation expenses, and $20,000 in class representative enhancements.

AB timely filed a notice of appeal on July 19, 2013.

## DISCUSSION

### I. *Preemption*

AB maintains that the FAAAA preempts California law governing meal and rest breaks as applied to motor carriers. AB's preemption argument does not apply to plaintiffs' other claims that do not involve meal and rest breaks. Also, AB does not argue that plaintiffs' UCL claim is preempted, but if AB were to prevail on its preemption argument, then AB's violation of California meal and rest break laws could not support that portion of the UCL claim. Because we conclude that AB's preemption argument fails, we need not further consider the UCL claim.

### A. *Standard of Review*

To the extent that we are called upon to interpret the FAAAA's preemption provision, discussed below, we apply a de novo standard of review. (*People v. Petrilli* (2014) 226 Cal.App.4th 814, 824.) To the extent that evidence is required to support AB's preemption argument, we review for substantial evidence. (*In re Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 311.)

4

We also begin with a presumption that California's meal and rest break laws are *not* preempted by the FAAAA.  In preemption cases " ' " 'in which Congress has "legislated . . . in a field which the States have traditionally occupied," . . . we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." ' " [Citations.]'  [Citation.]  This is known as the presumption against preemption, and its role is to ' " 'provide[] assurance that "the federal-state balance" [citation] will not be disturbed unintentionally by Congress or unnecessarily by the courts.' "  [Citation.]' [Citations.]" (*People ex rel. Harris v. PAC Anchor Transportation, Inc.* (July 28, 2014, S194388) ___ Cal.4th ___, 2014 WL 3702674 at p. *3 (*PAC Anchor*))  Regulation of wages and hours is, of course, an area of traditional state regulation.  (*California Div. of Labor Standards Enforcement v. Dillingham Construction., N.A.* (1997) 519 U.S. 316, 330-334.)

## B. *Meal and Rest Breaks—Legal Background*

Labor Code section 226.7 provides, in relevant part:  "(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the [IWC] . . . . [¶] (c)  If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the [IWC] . . ., the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

The transportation industry is covered by IWC Order No. 9-2001.  (Cal. Code Regs., tit. 8, § 11090.)  Meal periods are covered in section 11 of the order, and rest periods are covered in section 12.

An employer must provide a meal period of not less than 30 minutes for a work period of more than five hours, unless a work period of not more than six hours will complete the day's work.  (Cal. Code Regs., tit. 8, § 11090, subd. 11(A).)  A second meal period must be provided for a work period of more than 10 hours, unless the total number

of hours worked is no more than 12 hours.  (*Id.*, subd. 11(B).)  The second meal period may be waived by mutual consent only if the first meal period was not waived.[5]  (*Ibid.*)

A meal period is considered "on duty," and must be counted as time worked, unless the employee is relieved of all duty.  (Cal. Code Regs., tit. 8, § 11090, subd. 11(C).)  An "on duty" meal period is permitted "only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to."  (*Ibid.*)  The employer is required to keep time records of meal periods, except those that coincide with time "during which operations cease."  (Cal. Code Regs., tit. 8, § 11090, subd. 7(A)(3).)

An employer is required to "authorize and permit" rest periods of 10 minutes for each four hours worked, unless the total daily work time is less than three and one-half hours.  (Cal. Code Regs., tit. 8, § 11090, subd. 12(A).)  The rest periods, "insofar as practicable," are to be in the middle of each four-hour work period.  (*Ibid.*)  Rest periods are "counted as hours worked for which there shall be no deduction from wages."  (*Ibid.*)  If an employer fails to provide a rest period, then "the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."  (*Id.*, subd. 12(B).)

In *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*), our Supreme Court clarified that the law allows some flexibility with respect to the timing and circumstances of meal breaks.  Absent a waiver, the law "requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work."  (*Id.* at p. 1041.)  "[A]n employer must relieve the employee of all duty for the designated [meal] period, but need not ensure that the employee does no work."  (*Id.* at p. 1034.)  When "off duty" breaks are not feasible, IWC Order 9-2001 provides for "on duty" breaks by written agreement.

---

[5]  The length and frequency of meal breaks, as provided in California Code of Regulations, title 8, section 11090, subdivision 11(A), conform to the requirements of Labor Code section 512, subdivision (a), which also provides that the meal period may be waived by mutual consent of both the employer and employee.

(See *Brinker* at p. 1035 [discussing similar provisions in IWC Order No. 5].) "[I]n the context of an eight-hour shift, '[a]s a general matter,' one rest break should fall on either side of the meal break. [Citation.] Shorter or longer shifts and other factors that render such scheduling impracticable may alter this general rule." (*Id.* at p. 1032.)

## C. *The FAAAA's Preemption Clause*

The FAAAA contains an express preemption clause: "Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property*." (49 U.S.C. § 14501(c)(1), italics added.) State regulation of specified subjects, not including meal and rest break regulation, is exempted from the general preemption rule.[6] (49 U.S.C. § 14501(c)(2)-(3).)

"The FAAAA was enacted by Congress in 1994 as part of an ongoing effort to deregulate the interstate trucking industry. Pub.L. No. 103305, 108 Stat. 1569 (codified as amended in scattered sections of Title 49 of the U.S. Code) . . . ." (*Villapando v. Exel Direct Inc.* (N.D.Cal. Mar. 28, 2014, Nos. 12-cv-04137 JCS, 13-cv-03091 JCS) 2014 WL 1338297 at p. *6 (*Villapando*).) Deregulation of the interstate trucking industry was preceded by deregulation of air carriers in the Airline Deregulation Act of 1978 (ADA). (*Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 378 (*Morales*).) The ADA also preempts state law "related to a price, route, or service of an air carrier." (49 U.S.C. § 41713(b)(1).) In interpreting the FAAAA, the Supreme Court has followed *Morales* because of the similarity in language. (*Rowe v. New Hampshire Motor Transport Assn.* (2008) 552 U.S. 364, 370 (*Rowe*).)

---

[6] Excepted from preemption are "the safety regulatory authority of a State." (49 U.S.C. § 14501(c)(2)(A).) Plaintiffs argue that the meal and rest break laws, as applied to the transportation industry, are " 'genuinely responsive to motor vehicle safety' " and even if they were otherwise preempted by the FAAAA, they would be saved from preemption by the safety exemption. The trial court did not reach this argument. Nor do we.

7

Turning to the preemption clause itself, the use of "related to" renders its scope " 'deliberately expansive' " and " 'conspicuous for its breadth.' " (*Morales*, *supra*, 504 U.S. at pp. 383-384.)  "At the same time, the breadth of the words 'related to' does not mean the sky is the limit." (*Dan's City Used Cars, Inc. v. Pelkey* (2013) ___ U.S. ___ [133 S.Ct. 1769, 1778] (*Dan's City*).)  The preemption clause "does not preempt state laws affecting carrier prices, routes, and services 'in only a "tenuous, remote, or peripheral . . . manner." ' " (*Ibid.*)

The United States Supreme Court has decided two cases in which the meaning of "related to a price, rate or service" under the FAAAA was discussed, but none involving state regulation of employees' meal and rest breaks.[7]  *Rowe* concerned a Maine statute that required a licensed retailer of tobacco products to use a delivery service that provides a special kind of recipient-verification service. (*Rowe*, *supra*, 552 U.S. at p. 368.)  The Supreme Court found that the law was preempted:  "[I]t focuses on trucking and other motor carrier services . . ., thereby creating a direct 'connection with' motor-carrier services." (*Id.* at p. 371.)

In contrast, *Dan's City* concerned a New Hampshire law regulating the disposal of stored vehicles in which defendant towing company had disposed of plaintiff's car after towing it rather than allowing plaintiff to pay towing and storage charges. (*Dan's City*, *supra*, 133 S.Ct. at p. 1777.)  The Supreme Court, noting the FAAAA preemption clause is limited to laws that relate to price, route, or service concerning the *transportation of property*, held that the law was not preempted because it regulated "the disposal of vehicles once their transportation—here, by towing—has ended." (*Id.* at p. 1779.)

---

[7] Two other Supreme Court cases have decided other preemption issues under the FAAAA.  In *American Trucking Associations, Inc. v. City of Los Angeles, Cal.* (2013) ___ U.S. ___ [133 S.Ct. 2096], the parties agreed that the requirements at issue relate to a motor carrier's price, route, or service with respect to transporting property; the only disputed issue was whether the requirements " 'hav[e] the force and effect of law.' " (*Id.* at p. 2102.)  In *City of Columbus v. Ours Garage and Wrecker Service, Inc.* (2002) 536 U.S. 424 (*Ours Garage*), the Supreme Court held that the FAAAA "does not bar a State from delegating to municipalities and other local units the State's authority to establish safety regulations governing motor carriers of property." (*Id.* at p. 428.)

8

**D.** *The FAAAA Does Not Preempt California Meal and Rest Break Laws*

Whether the FAAAA preempts California meal and rest break requirements as applied to motor carriers is a question of first impression in California courts.[8]  However, while this case has been pending, two important decisions, *Pac Anchor* and *Dilts v. Penske Logistics, LLC* (9th Cir. Sept. 8, 2014, No. 12-55705) ___ F.3d___, 2014 WL 4401243, superseding opinion at 2014 WL 4401243, amended after denial of rehearing en banc (*Dilts*), were made which are instructive, if not wholly determinative, of the outcome here.[9]  Initially, our Supreme Court held in *Pac Anchor* that claims under the UCL based upon wage and hour regulations—not including meal and rest break rules— are not preempted by the FAAAA.  In that case, the People filed a complaint alleging that the defendants had violated the UCL by committing various labor violations, including violations under IWC Order No. 9-2001 sections 4 and 7.  (*PAC Anchor*, *supra*, 2014 WL 3702674 at p. *1.)  In rejecting defendant's preemption argument, the court held: "Although IWC Wage Order No. 9 regulates wages, hours, and working conditions 'in the transportation industry,' the sections on which the People rely do not refer to prices, routes, or services.  Section 4 governs minimum wage requirements, and section 7 governs employer recordkeeping.  If sections 4 and 7 have an effect on defendants'

---

[8] *Fitz-Gerald v. SkyWest Airlines, Inc.* (2007) 155 Cal.App.4th 411 dealt with labor issues under IWC Order No. 9-2001, including meal and rest breaks, and a UCL claim predicated on the labor violations.  (*Fitz-Gerald* at p. 415.)  The court determined that the labor claims were preempted by the Railway Labor Act (RLA) (45 U.S.C. § 181) which regulates labor relations between common interstate air carriers and their employees.  (*Fitz-Gerald* at pp. 418-422.)  The court was unconvinced that the labor claims were also preempted by the ADA.  (*Id.* at p. 423.)  Because the court had already found the labor issues to be preempted under the RLA, the court's rejection of preemption under the ADA was perhaps dictum, but we note that the court said: "Although the ADA has been broadly interpreted as preempting state 'enforcement actions having a connection with, or reference to, airline "rates, routes, or services" ' it has its limits.  [Citation.]  If the rule was otherwise, 'any string of contingencies is sufficient to establish a connection with price, route, or service, [and] there will be no end to ADA preemption.  [Citations.]' " (*Ibid,* fn. omitted.)

[9] We issued a focus letter, asking that the parties be prepared to address these two cases at oral argument.  They were.

9

prices, routes, or services, that effect is indirect, and thus falls outside the scope of the test set forth in *Morales*. For this reason, we also reject defendants' argument that the FAAAA facially preempts sections 4 and 7 of IWC Wage Order No. 9." (*PAC Anchor* at p. *8.)

In addition, while this case has been pending, the Ninth Circuit has specifically addressed the question of FAAAA preemption of California meal and rest break rules and concluded that the "FAAAA does not preempt" them.[10] (*Dilts, supra,* 2014 WL 4401243 at p. *10.) *Dilts* resolved a split among California federal district courts, nine of which had determined that the FAAAA preempts California meal and rest break laws[11] while four had found no preemption.[12]

AB contends that the meal and rest break laws have a significant impact on prices, routes and services in the following ways:

(1) Drivers must deviate from their routes in order to find a legal place to pull over and park, changing the driver's route and adding to the break time itself. This acts to "deprive motor carriers of the ability to follow any route that does not offer adequate

---

[10] Federal circuit court opinions do not bind California courts, but they "may serve as persuasive authority." (*People v. Memro* (1995) 11 Cal.4th 786, 882.)

[11] *Dilts v. Penske Logistics LLC* (S.D.Cal. 2011) 819 F.Supp.2d 1109; *Rodriguez v. Old Dominion Freight Line, Inc.* (C.D.Cal. Nov. 27, 2013, No. CV13-891 DSF (RZx)) 2013 WL 6184432; *Parker v. Dean Transportation, Inc.* (C.D.Cal. Oct. 15, 2013, No. CV 13-02621 BRO (VKBx)) 2013 WL 7083269; *Ortega v. J.B. Hunt Transportation, Inc.* (C.D.Cal. Oct. 2, 2013, No. CV 07-08336 (BRO) (FMOx)) 2013 WL 5933889; *Burnham v. Ruan Transportation* (C.D.Cal. August 16, 2013, No. SACV 12-0688 AG (ANx)) 2013 WL 4564496; *Cole v. CRST, Inc.* (C.D.Cal. Sep. 27, 2012, No. EDCV 08-1570-VAP (OPx)) 2012 WL 4479237; *Campbell v. Vitran Express, Inc.* (C.D.Cal. June 8, 2012, No. CV 11-05029-RGK (SHx)) 2012 WL 2317233; *Aguiar v. California Sierra Express, Inc.* (E.D.Cal. May 4, 2012, No. 2:11-cv-02827-JAM-GGH) 2012 WL 1593202; and *Esquivel v. Vistar Corp.* (C.D.Cal. Feb. 8, 2012, No. 2:11-cv-07284-JHN-PJWx) 2012 WL 516094.

[12] *Villapando*, *supra*, 2014 WL 1338297; *Brown v. Wal-Mart Stores, Inc.* (N.D.Cal. Apr. 18, 2013, No. C 08-5221 SI) 2013 WL 1701581; *Mendez v. R+L Carriers, Inc.* (N.D.Cal. Nov. 19, 2012, No. C 11-2478 CW) 2012 WL 5868973; and *Reinhardt v. Gemini Motor Transport* (E.D.Cal. 2012) 869 F.Supp.2d 1158.

locations for stopping, or force them to take different or fewer routes." "In essence, the laws bind motor carriers to a subset of all possible routes, in plain violation of the preemptive language . . . ."

(2) The "impact on routes . . . affects the number of deliveries a driver can make in a day." This results in a lower level of service.

(3) "[R]educing a driver's work time by at least 15% per day to account for state-mandated break periods will inevitably affect the prices a motor carrier can charge, driving up the cost of a given set of deliveries because it requires more employee time and fuel to accomplish."

AB's arguments here are essentially the same as the arguments made by the defendant in *Dilts*—arguments that the *Dilts* court rejected. (*Dilts*, *supra*, 2014 WL 4401243 at pp *8-*9.) In addition, the trial court here found that "AB presented no evidence of any imposed conditions or costs, let alone rising to the level of creating 'a significant impact' upon its prices. No showing was made regarding the number of routes, costs of additional drivers, tractors, trailers, or other such factors that AB could have claimed it would face should it have to comply with state law. To the contrary, AB has made no showing of interference with competitive market forces within the industry." AB does not dispute this assessment or cite to us any evidence in the record supporting its factual contentions as to the impact on its rates, routes or services. For this reason alone, AB has failed to sustain its burden on this appeal from the trial court's rejection of its preemption defense.[13] (*Farm Raised Salmon* Cases (2008) 42 Cal.4th 1077, 1088 ["It is well established that the party who asserts that a state law is preempted bears the burden of so demonstrating."].)

---

[13] AB noted at oral argument that there is evidence in the record to support its preemption defense, but the evidence to which counsel cited shows only that AB's routes vary daily and that "[a] driver's geographic location at the time one of these breaks must occur is contingent upon a whole host of variables." However, the trial court found that any impact of such variables on rates, routes, and service is "mere speculation." AB points to no evidence in the record casting doubt on the trial court's finding.

11

Further, AB's arguments are premised on a misreading of the regulations as requiring breaks at set times,[14] ignoring the flexibility, emphasized by *Brinker*, that employers have in scheduling breaks. AB's mischaracterization of the break requirements extends to statements such as "[s]tate meal and rest break laws . . . require . . . that motor carrier services cease at certain times of the day . . . ." This improperly applies what is a mandate affecting *individual workers* to the operation of the business *as a whole.* Nothing in the meal and rest break laws suggests that all workers must take their breaks at the same time, causing a business to cease providing services or that individual workers must take their breaks at any specific time. *Brinker* makes clear that is not the case.

Returning to the recent *Dilts* decision of the Ninth Circuit, after considering essentially the same arguments made by AB here, the court concluded that California meal and rest break laws are not preempted by the FAAAA. That conclusion was reached after careful, thorough, and, we believe, correct analysis. There is no need for us to reinvent the wheel by repeating or adding to that analysis here, except to note that the meal and rest break requirements are quite different from any laws the United States Supreme Court has found preempted under the FAAAA and "the scope of the pre-emption must be tempered by the 'presumption against the pre-emption of state police power regulations.' " (*Tillison v. Gregoire* (9th Cir. 2005) 424 F.3d 1093, 1098.)

Accordingly, we are in full agreement with the *Dilts* summation: "Although we have in the past confronted close cases that have required us to struggle with the 'related to' test, and refine our principles of FAAAA preemption, we do not think that this is one of them. In light of the FAAAA preemption principles outlined above, California's meal and rest break laws plainly are not the sorts of laws 'related to' prices, routes, or services that Congress intended to preempt. They do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or

---

[14] AB states in its opening brief: "At a macro-level, application of [the meal and rest break] regulations to the trucking industry has the effect of superimposing a rigid daily break regimen onto the natural ebb and flow of daily drayage deliveries . . . ."

12

indirectly.  They are 'broad law[s] applying to hundreds of different industries' with no other 'forbidden connection with prices[, routes,] and services.'  [Citation.]  They are normal background rules for almost *all* employers doing business in the state of California.  And while motor carriers may have to take into account the meal and rest break requirements when allocating resources and scheduling routes—just as they must take into account state wage laws, [citation,] or speed limits and weight restrictions, [citation]—the laws do not 'bind' motor carriers to specific prices, routes, or services, [citation].  Nor do they 'freeze into place' prices, routes, or services or 'determin[e] (to a significant degree) the [prices, routes, or] services that motor carriers will provide,' [citation]."  (*Dilts*, *supra*, 2014 WL 4401243 at p. *7.)

At oral argument, AB also invited us not to follow *Dilts* by arguing that its case was distinguishable, relying on footnote 2 of that opinion as well as a concurring opinion.  AB's reliance on these passages is of no avail.

In footnote 2, the *Dilts* majority wrote:  "We recently noted that it was an 'open issue' 'whether a federal law can ever preempt state law on an "as applied" basis, that is, whether it is proper to find that federal law preempts a state regulatory scheme sometimes but not at other times, or that a federal law can preempt state law when applied to certain parties, but not to others.'  [Citation.]  We need not resolve that issue here.  For the reasons discussed in this section, we hold that California's meal and rest break laws, as generally applied to motor carriers, are not preempted.  [¶] Were we to construe Defendant's argument as an 'as applied' challenge, we would reach the same conclusion and, if anything, find the argument against preemption even stronger.  Plaintiff drivers work on short-haul routes and work exclusively within the state of California.  They therefore are not covered by other state laws or federal hours-of-service regulations, 49 C.F.R. § 395.3, and would be without *any* hours-of-service limits if California laws did not apply to them.  See Hours of Service of Drivers, 78 Fed.Reg. 64,179–01, 64,181 (Oct. 28, 2013) (amending 49 C.F.R. § 395.3 to exclude short-haul drivers, in compliance with *Am. Trucking Ass'ns v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243 (D.C.Cir.2013), cert. denied, ___ U.S. ___, 134 S.Ct. 914 (2014)).  Consequently, Defendants in

13

particular are not confronted with a 'patchwork' of hour and break laws, even a 'patchwork' permissible under the FAAAA." (*Dilts, supra*, 2014 WL 4401243 at p. *8, fn. 2.)

In a concurring opinion, Judge Zouhary wrote: "[This case is not] about FAAAA preemption in the context of interstate trucking . . . . On this record, and in the intrastate context, California's meal and rest break requirements are not preempted." (*Dilts, supra*, 2014 WL 4401243 at p. *11 [conc. opn. of Zouhary, J.].)

AB maintains that, unlike the *Dilts* defendants, it is involved in interstate commerce because it transports goods from the Port of Oakland. Even if we were willing to analyze AB's preemption challenge on an "as applied" basis,[15] AB has failed to differentiate its case from *Dilts* in a meaningful way. It is clear from the context of *Dilts* that the terms "interstate" and "intrastate" are used in the footnote and concurring opinion in their purely geographical sense. The *Dilts* defendants did not send their drivers across state lines, and neither does AB. Nothing in *Dilts* suggests that the *Dilts* defendants *did not* participate in interstate commerce, despite their operations being confined geographically to California.[16] Like the *Dilts* defendants, AB is subject to the laws of no other state with respect to the drivers in the class before us.

The *Dilts* defendants and AB may differ in being subject to federal hours-of-service regulations. The Federal Motor Carrier Safety Administration (FMCSA) has

---

**15** In its opening brief, AB explicitly eschewed an "as applied" challenge, maintaining that the question of federal preemption is not subject to a case-by-case factual inquiry.

**16** Despite operating solely within California, the *Dilts* defendants and AB are equally subject to regulation under the Commerce Clause. (U.S. Const., art. I, § 8, cl. 3.) "This court has previously recognized that [motor vehicles] are instrumentalities of commerce even when used solely for intrastate purposes. [Citation.] That view seems to be shared universally among federal courts. [Citation.] Because a motor carrier is defined under the [FAAAA] as 'a person providing *motor vehicle* transportation for compensation,' [citation], [49 U.S.C.] section 14501 is within Congress' Commerce power because it regulates an instrumentality of commerce." (*Tocher v. City of Santa Ana* (9th Cir. 2000) 219 F.3d 1040, 1052, fn. omitted, overruled on other grounds by *Ours Garage, supra,* 536 U.S. at p. 432.)

promulgated safety regulations governing motor carriers, including hours-of-service regulation. (49 C.F.R. § 395.3.) These regulations require no specific meal break and require that a driver be permitted to drive no more than eight hours before having a break of at least 30 minutes. (49 C.F.R. § 395.3(a)(3)(ii).) The *Dilts* drivers were not subject to the federal hours-of-service regulations because they were "short-haul" drivers, who operated "within a 100 air-mile radius of the normal work reporting location." (*Dilts*, *supra*, 2014 WL 4401243 at p. *8, fn. 2; 49 C.F.R. § 395.1(e)(1)(i).)

At trial, AB did not attempt to prove that its drivers were not also short-haul drivers—that was not an issue—nor has it attempted to demonstrate that the record supports that proposition on appeal. The SOD described AB's operations as including deliveries "in the greater San Francisco Bay Area, and, on occasion, to locations throughout California." In its opening brief, in support of its own description of operations taking place outside of the Bay Area, AB cites the testimony of one driver who made three trips to Eureka and a trip to "someplace up in Shasta." Evidence that one driver made infrequent trips outside the Bay Area does not establish that, to a more than de minimis degree, AB's drivers are *not* short-haul drivers and that they differ from the *Dilts* drivers in this respect.

Even if AB's drivers in the class were subject to federal hours-of-service regulation, compliance with California meal and rest break laws will not conflict with the federal requirements. As with the *Dilts* drivers, AB would not be confronted with an unworkable "patchwork" of regulation.[17] We conclude that AB has not differentiated its

---

[17] In its opening brief, AB argued that "[i]f California can 'insist exactly when and for how long' carriers must provide breaks for drivers, other states could 'do the same, and . . . do so differently,' " leading to " 'a patchwork of state service-determining laws, rules and regulations,' in direct contravention of Congressional intent." In support of this proposition, AB asserted that "when the FMCSA revised its hours of service rules in 2005, it considered and rejected imposing meal and rest break requirements akin to the state regulations at issue here, concluding that requirements of that type 'would significantly interfere with the operational flexibility motor carriers and drivers need to manage their schedules.' " (Quoting Hours of Service of Drivers, 70 Fed. Reg. 49978, 50011 (Aug. 25, 2005).) We have consulted the Federal Register and find that the

case from *Dilts*. In any case, the *Dilts* majority made clear in footnote 2 that its decision did *not* rely in the intrastate nature of defendants' operations or on the fact that the routes were short-haul.

Our conclusion, in agreement with *Dilts*, that the FAAAA does not preempt California state law regarding meal and rest breaks is reinforced by our Supreme Court's recent decision in *PAC Anchor*. Although the meal and rest break claims at issue here are in different sections of IWC Wage Order No. 9 than the provisions at issue in *PAC Anchor*, we believe that the court's conclusion applies to them equally. We also note that although the *PAC Anchor* court did not rely on *Dilts* (and did not need to reach its holding), both the *PAC Anchor* and *Dilts* courts relied extensively on *Californians for Safe & Competitive Dump Truck Transportation v. Mendonca* (9th Cir. 1998) 152 F.3d 1184) (holding that the FAAAA does not preempt California's prevailing wage law when enforced against transportation companies). (*PAC Anchor*, *supra*, 2014 WL 3702674 at pp. *7-*10; *Dilts*, *supra*, 2014 WL 4401243 at pp. *4-*8, *11.)

Hence, while the district court decision in *Dilts* and the federal trial courts which followed it reached a different conclusion, our holding that the FAAAA does not preempt

---

FMCSA was commenting specifically on "a mandatory rest period (break) to mitigate any possible fatigue related to the 11th hour of driving," not on meal and rest breaks in general. (*Ibid.*) The Hours of Service of Drivers document in the Federal Register is a 93-page document and AB provides no citation within the document to a specification of what the FMCSA considered in 2005 and the specific findings it made, in violation of California Rules of Court rule 8.204(a)(1)(C).

Moreover, plaintiffs requested and we granted judicial notice of an amicus brief filed by the United States in *Dilts*. This brief notes that in 2008, the FMCSA determined that California meal and break laws were not regulations on motor vehicle safety and, thus, the California laws are not within the scope of the power of the Secretary of Transportation to declare them preempted. (Department of Transportation Notices, 73 Fed. Reg. 79204-01 (Dec. 24, 2008); see 49 U.S.C. § 31141.) The United States took the position in its brief that, at least in the intrastate context, California meal and break laws were preempted neither by the FAAAA nor federal safety regulations.

California wage and hour regulations is entirely consistent with the jurisprudence of the United States Supreme Court, the California Supreme Court, and the Ninth Circuit.[18]

## II. *Class Certification*

AB contends that the trial court erred when it certified the class because plaintiffs failed to fulfill their burden of showing that the claims of the putative class representatives were typical of those of the class as a whole, that individual issues predominated over common questions, and that it was probable that class members would come forward to prove their separate claims. In its order granting class certification, much of the evidence upon which the court relied came from AB's records and the deposition testimony of AB witnesses. The trial court specifically found that the proposed class was sufficiently numerous and ascertainable, that commonality was "adequately supported," that plaintiffs' claims were typical and that plaintiffs' counsel could adequately represent the interests of the proposed class. The court noted that AB "does not identify any individual issues, much less argue that individual issues will predominate over common ones."

" 'A judgment or order of the lower court is *presumed correct*.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) AB bears the burden on appeal of affirmatively showing error. (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189.) Despite this burden, AB, in its briefing, discusses *none* of the evidence presented in support of plaintiffs' motion for certification (no evidence was submitted in opposition to the motion). Instead, AB briefly provides its own assessment of evidence presented at trial—evidence that is irrelevant to a determination of whether the trial court erred at the time of class certification.

---

[18] The court has also considered *Massachusetts Delivery Assn. v. Cookley* (1st Cir. Sept. 30, 2014, No. 13-2307) ___ F.3d ___, 2014 WL 4824976, which was decided after this case was submitted. *Massachusetts Delivery* is neither binding on this court nor, to the extent that it may differ in its analysis from that of the Ninth Circuit in *Dilts* and from our anlaysis, persuasive.

17

Additionally, AB cannot show error without providing us with an adequate record. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.) AB has presented a record that is inadequate for review of evidence presented in support of class certification. Plaintiffs submitted numerous exhibits with their motion for class certification, including excerpts from the reporter's transcript (RT) of the deposition of William Aboudi, AB's president; excerpts from the RT of the deposition of Jovi Aboudi (the individual identified by AB as its person most knowledgeable regarding its payroll system and payment of wages); documents produced by AB during discovery, as well as AB's responses to interrogatories and requests for production; and excerpts from the RT's of the depositions of Godfrey and Gilbert. This evidence is included in the record on appeal.

However, plaintiffs' motion was also based on the declarations of Godfrey and Gilbert, which they had previously filed with the trial court. The memorandum of points and authorities in support of the motion relied on these declarations extensively.[19] AB failed to include these declarations when designating the clerk's transcript on appeal.

Accordingly, we reject AB's attack on the trial court's order certifying the class because AB has manifestly failed to affirmatively show error by accounting for all of the evidence presented in support of class certification and because the record provided by AB is inadequate for review of that evidence.

## III. *The Damages Award*

AB contends that the evidence at trial "showed that some AB trucking drivers took meal and rest breaks which complied with California regulations, while others did not. It also showed that some were encouraged to take the requisite breaks under state law, while others were not." AB notes the court's finding that " 'class members were routinely and consistently precluded by AB Trucking from taking meal periods and rest

---

[19] AB objected to the plaintiffs' reliance on the declarations, arguing that plaintiffs had not requested that the court take judicial notice of them. In reply, plaintiffs noted that a prior case management order allowed incorporation by reference of materials previously filed in the case. In its order granting class certification, the court overruled AB's objection, stating that the "objection to the Godfrey and Gilbert declarations on the basis of the date of filing is not well taken."

breaks,' " but finds it significant that "this does not say that 'all' class members were so precluded, or that it happened most of the time." AB asserts that the court should have reserved individual determinations of damages for a claims administration process[20] rather than granting "a maximum damage award to each and every member of the plaintiff class, based upon an assumption that all of them had the same experience as the handful of drivers who testified on plaintiffs' behalf at trial (and unlike those who testified on behalf of AB Trucking.)" AB claims that as a result of this error, "many if not most of the plaintiffs received a windfall damage award."

We review the trial court's damages award for substantial evidence. (*Altavion, Inc. v. Konica Minolta Systems Laboratory Inc.* (2014) 226 Cal.App.4th 26, 43.) In order to evaluate the evidence with respect to damages, we must first understand the evidence with respect to liability.

At trial, the court heard testimony from six drivers who testified for plaintiffs and two drivers, James Francis and Erik Gaines, who testified for AB. We quote the trial court's findings in the SOD concerning meal and rest periods, which AB does not dispute were supported by substantial evidence:

"The Class presented substantial and persuasive evidence that class members were routinely and consistently precluded by AB from taking meal periods and rest breaks. Under the California Supreme Court's decision in [*Brinker, supra,*] 53 Cal.4th 1004, AB failed to comply with its obligation to afford drivers meal periods because *Brinker* holds an employer's duty 'is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.' (See *Id.* at p. 1040.) An employer does not satisfy its obligation if it 'impedes' or 'discourages' employees from taking an 'uninterrupted 30-minute break.' (*Id.*) An

---

[20] AB does not contend that it sought a claims administration process for determining damages, nor can we find that it did so in the record.

19

employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks. (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 962-963 [(*Cicairos*)] . . . .)

"The recent *Brinker* decision provides two examples of unlawful discouragement—a scheduling policy that makes taking breaks 'extremely difficult' and creating an anti-meal-break policy enforced through ridicule or reprimand. The Class established both unlawful scenarios exist here. . . .

"In addition, the evidence shows AB neither maintained, nor provided drivers, any 'formal' meal period policy. The first example of unlawful discouragement provided in *Brinker* presumes the existence of a formal meal period policy. AB does not meet the 'provide' standard because it provided no evidence showing drivers were, at a minimum, informed in any meaningful or consistent way that they could take a meal period, or the definition of any such meal period. As AB had no meal period policy to 'undermine,' and the evidence presented shows that, beyond that, AB regularly discouraged the taking of legally protected breaks, AB has not shown it provided meal periods to the Class.

"The evidence reflects AB knew drivers were stuck in line to enter the Port, once inside the Port, and in order to exit the Port, every single day. Yet it did not provide for the relief of its employees' duties during this 'waiting' time. Waiting, even in a comfortable location, is 'on-duty' by definition: here, drivers were waiting to complete a task assigned by their employer. (See [*Morillion v. Royal Packing* (2000) 22 Cal.4th 575, 582].) While waiting to complete an assigned task, drivers were not free to leave to engage in personal activities. [Citation.] Instead, AB discouraged off-duty meal periods, and instructed drivers to eat while in line and 'on-duty.'

"Despite evidence drivers did not receive meal periods as required by law, AB presented no evidence that it created or entered into written agreements between AB and drivers for on-the-job paid meal periods. AB's [person most qualified] on payroll and payroll processing admitted that AB automatically deducted one hour's pay from each driver per each shift worked based on a presumption that one hour meal periods were taken."

As for rest breaks, the Court found: "Drivers testified that AB did not authorize and permit ten minute rest breaks. Moreover, the evidence reflected AB typically encouraged drivers not to take, or prevented drivers from taking, rest breaks. AB provided no evidence of any formal policy on rest breaks. As with meal periods, there is no indication drivers were, at a minimum, informed in any meaningful or consistent way that they could take rest breaks, or the definition of any such rest breaks."

AB's contention that the SOD did not apply to "all" class members and that it did not say that deprivation of meal and rest breaks happened "most of the time" is not well taken. A fair reading of the court's factual findings shows that with respect to the class as a whole, the court determined that AB had no policy of providing rest and meal breaks, that breaks the drivers were able to take were usually on-duty breaks, and that AB consistently discouraged or prevented the taking of off-duty breaks. The court's finding of liability applied to the class as a whole, and to its members individually.

As to damages, the court heard extensive testimony from Andrea Don, who presented the damages model that the court adopted in its damage award. Don prepared her model from AB's payroll and employment records that were produced during discovery. The model presents a damage calculation for each individual class member and Don's testimony detailed the assumptions and calculations that contributed to the individual damages presented to the court. AB identifies no evidence in its brief that would undermine the validity of these calculations.[21] AB identifies no individual factor affecting damages that was supported by evidence at trial and was not accounted for in

---

[21] AB does argue that "some AB Trucking drivers took meal and rest breaks which complied with California regulations," but the record does not bear this out. Francis stated that he "always" took his lunch break, but we find no testimony that these were off-duty breaks, in conformance with IWC Order No. 9-2001. Indeed, Francis testified that he would "put [his] lunch off" if he was dispatched on a "hot" job. This implies that when he took a meal break he was not relieved of all duties, and was expected to, and did, respond to dispatch calls.

Gaines said that he took rest breaks, but it appears that he counted time in his truck, waiting in line at the Port—time that was not off duty—as break time.

Don's calculations. We reject AB's characterization of the damages as based on "speculation."

It was the court's finding that AB did not provide for conforming breaks and actively and consistently impeded or discouraged drivers from taking them. AB points to no substantial evidence that, despite AB's actions, drivers still managed to take off-duty breaks, in conformance with the requirements of IWC Order No. 9-2001, and thus has failed to undermine the damages model upon which the court based its award. The damages model was supported by ample evidence and we conclude that substantial evidence supported the court's damage award.[22]

## IV. *The IWC Wage Order 9-2001 Exclusion does not Apply*

AB contends that IWC Order No. 9-2001 does not apply to them because its drivers are expressly excluded from coverage. In support of this contention, AB cites subdivision 3(L) of the Order, which provides, in relevant part: "The provisions of this section are not applicable to employees whose hours of service are regulated by: [¶] (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers . . . ." (Cal. Code Regs., tit. 8, § 11090, subd. 3(L).) Assuming that AB's drivers are governed by the applicable federal regulations,[23] AB can prevail in its argument only if "this section" refers to the entire order and not just to subdivision 3, which covers "Hours and Days of Work."

"When [IWC Order] No. 9[-2001] refers to itself in its entirety, the phrase 'this order' or 'this wage order' is used." (*Cicairos, supra,* 133 Cal.App.4th at p. 958.) "The

_____

**22** In the final paragraph of its brief in the section attacking the damage award, AB states that the damage calculation was "based upon little more than guesswork as to causation" and "must be reversed for this reason alone." This is a wholly frivolous argument. The court clearly concluded that class members were deprived of conforming meal and rest breaks because of AB's lack of a policy authorizing and providing such breaks, and AB's acts impeding or discouraging the taking of breaks.

**23** AB asserts that its drivers are subject to the federal regulations "[a]s holders of commercial vehicle licenses for trucks in excess of 33,000 pounds," citing 49 United States Code sections 31502, 31136, and 49 Code of Federal regulations sections 395.1-395.13. We need not decide whether AB is correct.

22

'order' is . . . broken down into 22 'sections.' The difference between the entire 'order' and its individual 'sections' is clear." (*Ibid.*) "Basic rules of statutory construction . . . require that the phrase 'this section' in [California Code of Regulations, title 8, section 11090, subdivision 3(L)] be read to encompass only the provisions of section 3 'Hours and Days of Work' of which it is a part. Therefore, truck drivers are not exempted from the other requirements of wage order No. 9." (*Id.* at p. 959.)

We agree with *Cicairos* and reject AB's argument.[24]

## V. *Attorney Fees and Class Representative Enhancements*

AB contends that we must set aside the award of attorney fees and class representative enhancements, but this contention is predicated entirely on our having found that the court erred, as asserted in AB's other arguments. Because we have found no error, we affirm the award of attorney fees and class representative enhancements.

## DISPOSITION

The judgment of the trial court and its post-judgment order awarding attorney fees, litigation expenses, and class representative enhancements are affirmed. Plaintiffs are awarded their costs on appeal. The matter is returned to the trial court for an award of attorney fees on appeal.

---

[24] In its reply brief, AB relies on *Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171, in which the court considered only overtime claims. *Cicairos* explicitly rejected an expansive reading of *Collins* that would apply to meal and rest break claims. (*Cicairos*, *supra*, 133 Cal.App.4th at pp. 956-957.)

_____
Brick, J.*

We concur:


_____
Kline, P.J.


_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                Superior Court of Alameda County

Trial Judge:                                Honorable Robert B. Freedman

Attorney for Defendant and Appellant:       Ronald C. Chauvel
                                            Kenneth M. Weinfield
                                            Chauvel & Glatt, LLP

Attorneys for Plaintiffs and Respondents:   David A. Rosenfeld
                                            Theodore Franklin
                                            Caren P. Spencer
                                            Lisl R. Duncan
                                            Weinberg, Roger & Rosenfeld